CALDWELL, appellant, v. COMMERCIAL WAREHOUSE COMPANY.

*Usury* — *construction of charter of corporation* — *commissions* — *Injunction.*

A corporation was empowered by its charter to loan moneys and to receive and take the management and custody of securities "upon such terms and for such commissions, in addition to interest, as shall be stipulated and agreed upon by and between the said company and the parties receiving the loan or advance." Plaintiff borrowed money of the company and deposited securities upon the following terms: In addition to interest and the expenses and disbursements attending the care and custody of the securities and eight per cent on the gross proceeds of a sale thereof, in case it should be made, plaintiff was to pay a sum equal to twenty-four per cent per annum on the loan as "commissions." The risk of loss of the securities, except from the company's gross negligence, was on plaintiff. In an action by plaintiff to compel the surrender of the securities, alleging the loan to be usurious, *held*, that the company's charter did not allow it to make any loans which were in fact usurious, and that the facts entitled the plaintiff to an injunction pending the trial of the cause, restraining such company from selling the securities.

APPEAL from an order dissolving an injunction. The action was brought by Josiah Caldwell against The Commercial Warehouse Company of New York. The case was this: Defendant, by its charter, as amended by § 7 of Laws of 1871, chap. 278, was empowered to loan money and to receive securities and take the "management, charge or custody" thereof, "upon such terms and for such commissions, in addition to interest, as shall be stipulated and agreed upon by and between the said company and the parties receiving the loan or advance as aforesaid." It appears by the complaint that plaintiff procured certain loans of defendant, and deposited certain securities upon the following terms: "The compensation of said company for such advance or loan, or for all management and charge of said securities, shall be eight per cent upon the amount of such advance or loan, over and above all disbursements, in addition to interest." A sale of the securities was provided for in case of non-payment, "and the commissions of the said company, upon a sale of the said securities, shall be eight per cent upon its gross proceeds." The plaintiff "further agreed to pay the said company, on the first of each month, $4,006.80 on account of said interest and commission." It was provided that the company should "not be liable for any loss or injury which may happen to the securities

mentioned　*　*　*　whilst in its custody." Other loans were made on like conditions. The complaint demanded that the securities be delivered up, and that the loans and advances be declared and adjudged to have been usurious, or that plaintiff pay to defendant whatever is due, and that the securities be then delivered ; also, that defendant be enjoined from selling or disposing of the securities. The answer denied any usurious intent. A temporary injunction was granted in the case, which was dissolved on the ground that the charter allowed any amount of commissions which plaintiff and defendant might agree upon. The injunction was, however, allowed to stand pending the appeal by plaintiff.

*J. K. Porter* and *G. W. Cotterill*, for appellant, cited *Dry Dock Co.* v. *Am. Life Ins. & Trust Co.*, 3 N. Y. 344 ; S. C., 3 Sandf. Ch. 215 ; *Huber* v. *People*, 49 N. Y. 132; *Dunham* v. *Gould*, 16 Johns. 367; *Bank of Salina* v. *Alvord*, 31 N. Y. 472; *Stover* v. *Coe*, 2 Bosw. 660.

*E. W. Stoughton* and *Alexander & Green*, for respondent.

·DAVIS, P. J. It is not necessary in determining this appeal that the court should pass upon the question whether or not the several agreements between the parties do not bear upon their face conclusive evidence of violations of the statute against usury. The complaint avers (and the answer denies) that the contracts in relation to commissions · were designed to be, and were, mere covers for usury, the intent being, on the one hand, to pay, and, on the other, to exact and receive a greater rate of interest than that allowed by law. A fair issue of fact for a jury, or for the court, if the issue be tried without a jury, whether the charges of eight per cent upon loans for four months over and above lawful interest, and all expenses and disbursements, ostensibly as commissions, were not merely a device to evade the prohibitions of the charter and the usury laws, is presented by the pleading. There can be no question, we think, but that the defendant is subject, notwithstanding the language and character of its charter, to the laws against usury, and their penalties. "In point of law it is entirely immaterial in what manner or form, or under what device or pretense usury is taken, the ingenuity of man has been taxed in vain in the effort to avoid the laws in relation to the subject ; and whenever a court or

jury can clearly see that any contract, whatever may be its form, is really intended as a cover for taking usury, such contract will be declared void." See *White* v. *Stillman*, 25 N. Y. 541.

It is not an answer to say, as urged by the court below, that the defendant's charter authorizes commissions for merely "taking the custody of property" pledged as collateral to the loan, for this is only begging the question whether the eight per cent commissions charged for custody in this case was not really excessive interest christened by another name for an illegal purpose.

The decision of the General Term of this department, in *Tyng* v. *Commercial Wareh. Co.*, is not controlling of the question in this case. In that case (as said by LEARNED, J., in the prevailing opinion), "there is no allegation that an evasion of the usury laws was intended." And the judge lays much stress upon the absence of such averment and of proof to establish it.

Here the averment is distinctly made ; and although denied, we think it is our duty, in determining whether the injunction should be retained till the trial of the issue, to look so far into the transaction as to pass at least upon the probabilities of the truth of the averment.

In addition to seven per cent for interest and all the expenses and disbursements attending the care and custody of the collaterals, and eight per cent on the gross proceeds of a sale, if sale is made, a sum equal to twenty-four per cent per annum on the loan, payable in monthly installments, is charged as commissions for care and custody of the bonds and stock certificates pledged as collateral, and this upon an agreement which devolves all risk of loss of the securities from any cause, except gross negligence, upon the borrower. It seems to us impossible to say that a jury would not be justified, from the extortionate character of these charges under the name of commissions, in finding that the transaction was a cover for excessive interest rather than a compensation to bailees for the care and safe-keeping of valuables. We think the question should go to a trial, and that, in the meantime, the sale of the collaterals should be restrained.

The order of the court below should be reversed, with costs, and an order entered continuing the injunction.

DANIELS and BRADY, JJ., concurred.

*Ordered accordingly.*